So Ordered.

Signed this 11 day of August, 2026.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

EDWARD B. SCHARFENBERGER,              Chapter 11
                                       Case No. 25-11477-1 (PGR)

                           Debtor.

_____

APPEARANCES:

BOND, SCHOENECK & KING, PLLC        ANDREW SCOTT RIVERA, ESQ.
*Counsel for Debtor Edward B. Scharfenberger*
One Lincoln Center, Syracuse, New York 13202

OFFICE OF THE U.S. TRUSTEE          HARRISON E. STRAUSS, ESQ.
11a Clinton Avenue, Suite 620, Albany, New York 12207

MORITT HOCK & HAMROFF, LLP          THERESA A. DRISCOLL, ESQ.
*Special Counsel to the Office of NYS Attorney General*
400 Garden City Plaza, Garden City, New York 11530

LIPPES MATHIAS, LLP                 LEIGH A. HOFFMAN, ESQ.
*Counsel to AARP Foundation on behalf of the St. Clare's Pensioners*
677 Broadway, Albany, New York 12207

## **MEMORANDUM-DECISION AND ORDER CONVERTING CASE**

As this Court has previously recognized, bankruptcy cannot be used solely to

bypass a bond pending appeal, its "ultimate aim must be reorganization or orderly

1

liquidation." *In re Grasso,* No. 25-10548 (PGR), 2025 WL 2827765, at *1 (Bankr. N.D.N.Y. Oct. 3, 2025).

Edward B. Scharfenberger ("Debtor") is a former bishop of the Roman Catholic Diocese of Albany. (Docket No. 80-1, at ¶1). In December of 2025, a jury in Schenectady, New York awarded $54.2 million to 1,124 former employees of St. Clare's Hospital (the "St. Clare's Pensioners"). (Docket No. 66-2, at ¶ 2 & 66-3). The jury found that several defendants, including the Debtor, failed to properly administer the hospital's pension plan. (*Id.*). The Diocese and Debtor are jointly and severally liable for the damages award, subject to a pending appeal. (*Id.*).

The New York State Attorney General and AARP Foundation litigated the case, obtained the verdict, and are defending the appeal in state court.

Presently pending are a Motion to Convert this Case to a Case under Chapter 7 filed on behalf of the St. Clare's Pensioners (Docket No. 66); a Motion to Dismiss or Convert filed by the United States Trustee (Docket No. 70); and the Debtor's Motion for Suspension of this Case. (Docket No. 76). For the following reasons, this case is converted to a case under Chapter 7.

### Jurisdiction

This Court has core jurisdiction over the parties and the subject matter of this contested matter under 28 U.S.C. §§ 1334(b) and 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

The Debtor is a defendant in two lawsuits alleging breach of contract and breach of fiduciary duty regarding the management of a pension fund intended for the benefit of the St. Clare's Pensioners. (Docket No. 66-2, at ¶ 2 & Docket No. 66-3, at p. 1-2). The first lawsuit was filed in September of 2019 by Mary Hartshorne and 174 other pensioners. (Docket No. 66-3, at p. 1-2). The second suit was filed in May of 2022 by Letitia James, the Attorney General of the State of New York. (*Id.*). The cases were consolidated for all purposes by the Honorable Vincent W. Versaci, Acting Justice of the New York State Supreme Court. (*Id.*)

The consolidated lawsuit was tried before a jury in November and December of 2025, with Justice Versaci presiding. (*Id.*). The jury returned a verdict finding that the St. Clare's Pensioners were entitled to $54.2 million in damages. (*Id.*).

The jury did not find the Diocese directly liable. (Docket No. 66-3, at ¶ 6). However, the jury determined that some of the other defendants (including the Debtor) were employees or agents of the Diocese and committed wrongful conduct in furtherance of the Diocese's business and within the scope of their employment or agency. (*Id.*).

The Debtor, by and through his counsel, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on December 16, 2025. (Docket No. 1). The filing occurred while the St. Clare's jury was still empaneled and preparing to fix the amount of punitive damages. On December 18, 2025, this Court entered a Consent Order that lifted the automatic stay to permit the State Court to enter an Order

confirming the jury's verdict, with the St. Clare's Pensioners agreeing to waive the proceeding for a determination of the amount of punitive damages. (Docket No. 13).

In a post-trial Order dated December 23, 2025, Justice Versaci confirmed the jury's verdict. (Docket No. 66-3).  On March 25, 2026, Justice Versaci denied a motion to set aside the verdict. (Docket No. 66-5).  The Debtor has appealed both decisions to the New York State Supreme Court, Appellate Division, Third Judicial Department. (Docket No. 66-6).

On March 27, 2026, this Court entered an Order granting Debtor's motion to convert this case to a case under Chapter 11. (Docket No. 42).

The New York State Attorney General and AARP Foundation, acting on behalf of the St. Clare's Pensioners, moved to convert this case to a case under Chapter 7 on June 3, 2026. (Docket No. 66).  The United States Trustee moved to dismiss or convert the case on June 12, 2026. (Docket No. 70).  On June 17, 2026, the Debtor moved for suspension of this case pending the outcome of the State Court appeal. (Docket No. 76).  The St. Clare's Pensioners and United States Trustee oppose the suspension motion. (Docket Nos. 78 & 79).  The Debtor opposes the dismissal/conversion motions. (Docket No. 81).

This Court heard oral argument on July 8, 2026, in Albany, New York, with appearances as indicated above, and reserved decision.

## Analysis

"Bankruptcy is an equitable remedy whereby a debtor is clothed with the protection of an automatic stay, preventing his creditors from acting against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a 'fresh start'. . . ." *9261 Shore Rd. Owners Corp. v. Seminold Realty Co.* (*In re 9281 Shore Rd. Owners Corp.*), 187 B.R. 837, 848 (E.D.N.Y. 1995) (internal quotation marks and citation omitted).

Section 1112(b)(1) of the Bankruptcy Code gives the court the power to dismiss a Chapter 11 case, or convert it to a case under Chapter 7, "whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1).

The Code provides examples of "cause" for dismissal or conversion, including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and "gross mismanagement of the estate." *Id.*

These examples are "illustrative, not exhaustive," *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C–TC 9th Ave. P'ship*), 113 F.3d 1304, 1311 (2d Cir.1997), and, once cause is established, the court has "wide discretion" in determining whether dismissal or conversion is the right remedy. *In re Dark Horse Tavern*, 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995).

### *C-TC Factors*

The Second Circuit has explained that "[w]hen it is clear that, from the date of the filing, the debtor has no reasonable probability of emerging from the bankruptcy

proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous." *C-TC*, 113 F.3d at 1310.

Moreover, "an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally—the debtor must have some intention of reorganizing." *Id.* (quoting *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991)).

Courts in this Circuit analyze whether cause exists under § 1112(b)(1) using the factors identified in *C-TC* :

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
>
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (6) the debtor has little or no cash flow;
>
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
>
> (8) the debtor has no employees.

*Id.* at 1311.

"A court should not apply the *C-TC* factors mechanically or in isolation, and may choose to consider any one or all in its effort of analyzing the totality of the circumstances." *In re Neilson*, No. 17-10631, 2018 WL 6982228, at *3 (Bankr. N.D.N.Y. Aug. 31, 2018), *aff'd sub nom. Neilson v. Est. of Benedict*, No. 1:18-CV-1101, 2020 WL 1140493 (N.D.N.Y. Mar. 9, 2020).

In the present case, the Debtor has limited available assets, consisting primarily of retirement accounts and pension benefits (which are exempt), investment accounts (at least some of which appear to be exempt), and a one-half interest in a Florida condominium (which is the subject of a pending exemption dispute between the parties). (Docket No. 18, at p. 3-11).[1]

The only asset that might yield a meaningful recovery to creditors is an unliquidated indemnification claim against the Diocese related to the jury's verdict in favor of the St. Clare's Pensioners. (Docket No. 18, at p. 8).

As discussed further below, there are sound reasons for believing this asset is better administered by a third party, rather than the Debtor.

This factor weighs in favor of finding cause to dismiss or convert. *See In re Syndicom Corp.*, 268 B.R. 26, 50 (Bankr. S.D.N.Y. 2001) ("Other than some flotsam and jetsam furniture and fixtures in the Apartment, the Debtor's only asset is its interest, to the extent it has one, in the Apartment, and the bundle of alleged contractual and litigation rights emerging from the Apartment option.").

---

[1] *See* Docket No. 59 (U.S. Trustee's Objection to Exemption); Docket No. 64 (St. Clare's Pensioners' Amended Objection to Exemption); Docket No. 80 (Debtor's Response to Objection).

As to the second factor, the Debtor has only one secured creditor (an auto lender being paid by the Diocese) and no significant unsecured creditors other than the St. Clare's Pensioners. (Docket No. 18, at p. 12-387).

The lack of a "significant creditor body. . .to be protected by the Debtor's filing" weighs in favor of finding cause to dismiss or convert. *In re Ancona*, No. 14-10532 (MKV), 2016 WL 7868696, at *4 (Bankr. S.D.N.Y. Nov. 30, 2016); *see also Syndicom*, 268 B.R. at 51 ("Other than Mr. Takaya (who welcomes, and seeks, relief from the stay or dismissal), the Debtor has only two or three creditors who are not either insiders or the Debtor's lawyers. They represent less than 8% of the Debtor's stated total claims. There certainly is not a significant creditor body to protect.").

The second factor weighs in favor of dismissal or conversion.

As to the third *C-TC* factor, although this case does not involve foreclosure, this factor focuses on whether the bankruptcy filing is a litigation tactic to gain advantage in a state court proceeding. *See, e.g.*, *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 572 (D. Conn. 2016) ("The reason Factor Three focuses on pending foreclosure is that such a scenario suggests that the filer's only intent in seeking bankruptcy protection was to stall the foreclosure. Evidence of virtually the same intent is supplied by a different, yet similar, circumstance in this case: as noted, the timing of Sapphire's bankruptcy filing strongly suggests that Sapphire was using the bankruptcy laws as a litigation tactic to stall the State Court Action, which threatened, in effect, to divest it of its sole asset.").

8

New York law generally requires an appellant seeking a stay to post a bond to protect the appellee during the pendency of the appeal. *See* N.Y. C.P.L.R. § 5519. Here, the intent of Debtor's filing was to obtain a stay of the St. Clare's Pensioners' collection efforts pending appeal without posting the supersedeas bond required under applicable non-bankruptcy law.  This factor weighs in favor of finding cause for dismissal or conversion.

The fourth and fifth factors also weigh in favor of finding cause.  These factors ask whether the case is a two-party dispute and whether the timing of the case evidences an intention to delay or frustrate collections.

This case is fundamentally a two-party dispute that can be — and can only be — resolved in State Court, as Debtor acknowledges by seeking suspension of this case to perfect and pursue the appeal.  There is no question that Debtor filed this case to delay the Pensioners' collection efforts by obtaining a bankruptcy stay pending his State Court appeal without providing the protection of a bond otherwise required under state law.

The eighth factor also points toward a finding of cause.

This factor relates to a debtor's ability to reorganize and/or proceed to an orderly liquidation.  *See, e.g.*, *In re Encore Prop. Mgmt. of W.N.Y., LLC*, 585 B.R. 22, 30 (Bankr. W.D.N.Y. 2018) (dismissing case for bad faith where debtor had "no cash flow and no employees" and debtor's "only 'business' [was] to litigate with [the judgment creditor]"); *In re Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545, at *11 (Bankr. S.D.N.Y. Nov. 3, 2017) (dismissing case where debtor had no

cash flow, was not a "going concern," and bankruptcy's "only purpose a hope to relitigate a state court action").

While it is well-settled that "filing for chapter 11 relief to stay state court litigation is not *per se* bad faith," the case's eventual end must either be reorganization or orderly liquidation. *Neilson*, 2018 WL 6982228, at *3-4 ("[W]here a debtor has minimal income, a court may find that such a case was filed as a litigation tactic and not in an effort to reorganize.").

Moreover, courts consistently recognize sound reasons for discouraging the practice of using bankruptcy as a backdoor bond. *See Syndicom*, 268 B.R. at 53-55 ("There is no question that many courts have considered a debtor's need and ability to reorganize, and a good faith purpose in seeking reorganization, as relevant to good faith in filing, a view with which this Court concurs."); *see also In re Wally Findlay Galleries, Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) ("The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating. This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings.").

In addition, courts have cited federalism concerns to caution against an overly permissive posture with respect to filings designed to circumvent state supersedeas bond requirements. *See In re Smith,* 58 B.R. 448, 451 (Bankr. W.D. Ky. 1986) ("State law requirements of supersedeas bonds are not to be lightly ignored. The right to appeal is not an absolute one, having neither common law nor federal constitutional basis, but is a creation of statute, and its exercise should be strictly in accordance

with the controlling state law. Due regard for principles of federalism requires no less than our unrelenting respect for the controlling state law on supersedeas bonds. . . ."); *Southmark Corp. v. Riddle* (*In re Southmark Corp.*), 138 B.R. 820, 828 (Bankr. N.D. Tex. 1992) ("Interference with the state statutory system regulating appeals and the protection of judgment creditors should not be taken lightly.").

In any event, no matter how broad or narrow the overall view, courts uniformly insist on a connection to one of the two primary purposes of bankruptcy relief — rehabilitation/reorganization or orderly liquidation. *Compare In re Boynton*, 184 B.R. 580, 583 (Bankr. S.D. Cal. 1995) ("Generally, two types of cases have allowed a Chapter 11 filing in lieu of a supersedeas bond. These are: 1) where there is a multinational company faced with mass tort litigation; or 2) where a large debt would force the debtor to close its business and liquidate."), *and Margitan v. Hanna* (*In re Hanna*), No. BAP EW-17-1238-BJF, 2018 WL 1770960, at *6 (B.A.P. 9th Cir. Apr. 13, 2018) ("The bankruptcy court properly considered the viability of the Hannas' Plan as weighing heavily against dismissal."), *with In re Fox*, 232 B.R. 229, 235 (Bankr. D. Kan. 1999) ("The evidence suggests that the Debtor did not file this bankruptcy solely to avoid posting a supersedeas bond, but was also motivated by a desire to reorganize or liquidate in an orderly fashion."), *In re John V. Gally Fam. Protective Tr. Inc.*, No. 2:22-BK-05770-DPC, 2022 WL 18715956, at *6 (Bankr. D. Ariz. Dec. 21, 2022) (denying motion to dismiss where debtor could not post appellate bond, but was liquidating real estate "in an orderly fashion" and "evinced an intent to speedily and efficiently confirm a feasible plan by filing a plan of reorganization within 90 days"),

11

*and In re Morris*, No. 3:16-BK-3070-PMG, 2017 WL 3503651, at *4 (Bankr. M.D. Fla. July 19, 2017) ("In summary, it does not appear that this is a two-party dispute in which the Debtor filed the case solely to avoid paying the marital debt owed to Stephens…. Instead, the Debtor in this case faced substantial third-party debt, including several liens on his home and a … debt to the Internal Revenue Service, and has dealt with the claims through the provisions of Chapter 13.").

Here, Debtor's counsel's protestations notwithstanding, neither reorganization nor liquidation in Chapter 11 is reasonably in prospect — dismissal would be the ultimate end of this case irrespective of the outcome of the appeal.

Debtor is retired, his income is passive (retirement funds and pension payments), he does not face financial pressure from creditors other than the St. Clare's Pensioners, and most of his assets are exempt.

If Debtor's appeal fails, he cannot satisfy the Pensioners' claim or propose a confirmable plan of reorganization.  If the appeal succeeds, the Debtor can meet his other obligations and bankruptcy will no longer be necessary.  *See In re Purpura*, 170 B.R. 202, 207 (Bankr. E.D.N.Y. 1994) ("Purpura's financial posture negates any legitimate reorganization purpose. According to his bankruptcy schedules, he is solvent and, apart from Maida, reports insubstantial debt in relation to his assets held by a handful of creditors. Purpura presented no evidence that those creditors were pressing for payment when he filed. He does not need Chapter 11 protection to conduct his business affairs and pay his creditors."); *In re Banks*, 241 B.R. 434, 437 (Bankr. E.D. Ark. 1999) ("The purpose of the Bankruptcy Code is to provide debt relief

12

to debtors who require a 'fresh start.' It is not a forum to avoid the import of state court decisions or other lawful obligations.").

"[B]ankruptcy rehabilitation provisions are intended to benefit only those in genuine financial distress and are not to be used strategically as an avoidance mechanism to get out of particular obligations viewed by a debtor as having undesirable consequences." *Purpura*, 170 B.R. at 207.

Application of the *C-TC* factors results in a finding of cause to dismiss or convert this case.

### Conversion or Dismissal

"Once a party establishes cause, a court must examine whether dismissal or conversion [to] a case under chapter 7 is in the best interests of the creditors and the estate." *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

The court has "wide discretion" in determining the right remedy. *Dark Horse Tavern*, 189 B.R. at 580. While the "Code does not define the 'best interests of creditors,'. . .relevant case law makes it clear that courts are required to consider and weigh the totality of facts and circumstances of the individual case when determining what is in the best interests of creditors." *In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001).

Courts generally consider the following factors when weighing whether to dismiss or convert a case:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal,

(2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted,

(3) whether the debtor would simply file a further case upon dismissal,

(4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors,

(5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise,

(6) whether any remaining issues would be better resolved outside the bankruptcy forum,

(7) whether the estate consists of a "single asset," [and]

(8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

*Id.* (citing 7 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 1112.04[6] (15th ed. Revised 2000)).

Here, only the fourth and seventh factors are applicable and both favor conversion. The Debtor's indemnification claim against the Diocese is the only asset with the possibility of providing meaningful recovery. The St. Clare's Pensioners reasonably question whether Debtor is truly incentivized to protect and pursue that claim vigorously, particularly considering the Debtor's limited resources, prior status as an insider of the Diocese, and ongoing relationship with the Diocese (which provides him with a residence in Albany, mobile phone, and motor vehicle free of

14

charge). *See In re Nat. Plants & Lands Mgmt. Co., Ltd.*, 68 B.R. 394, 396 (Bankr. S.D.N.Y. 1986) (granting conversion where there was "a question as to whether the debtor would be as impartially motivated to collect the amounts due from its affiliates and to determine whether or not preferential or otherwise avoidable transfers had been made to these affiliates or to its principal shareholder" and the "debtor's principal shareholder is in no position to exercise undivided loyalty to the rights of all interested parties"); *In re BTS, Inc.,* 247 B.R. 301, 310 (Bankr. N.D. Okla. 2000) ("At present, the major assets of the estate are causes of action which must be fixed and liquidated to be of any value. Generally speaking, it is in the best interests of creditors to have this done by a disinterested trustee, so the merits of the debtor's third-party claims can be evaluated dispassionately, and so the fruits of a successful litigation can be preserved for ratable distribution." (citation omitted)); *In re Fleetstar LLC*, 614 B.R. 767, 789 (Bankr. E.D. La. 2020) ("Considering that dismissal would give an insider and competing creditor the reins on the assets of the estate … at this point, creditors' best hope for recovery is through conversion.").

Both the United States Trustee (Docket No. 70, at p. 10) and the St. Clare's Pensioners (Docket No. 66, at ¶ 39) advocate conversion rather than dismissal. This is an additional factor weighing in favor of conversion. *See In re Ghaffari*, No. 24-10453-J11, 2025 WL 869518, at *11 (Bankr. D.N.M. Mar. 19, 2025)("It is also appropriate for the Court to consider the preferences expressed by parties in interest, especially the UST, who serves as a neutral third party overseeing the bankruptcy case."); *In re Mazzocone*, 183 B.R. 402, 411-12 (Bankr. E.D. Pa. 1995) ("[W]here an

15

interested party other than the debtor, particularly a completely neutral, 'watchdog' party such as the USTE, feels strongly enough about the proper disposition of a bankruptcy case to move for dismissal, we are even more strongly inclined to dismiss a case than if only the debtor is pressing for this result."), *aff'd*, 200 B.R. 568 (E.D. Pa. 1996); *In re Gollaher*, 463 B.R. 142 (B.A.P. 10th Cir. 2011) ("Courts also consider the preferences expressed by creditors for either dismissal or conversion as they are the best judge of their own best interests.").

### Debtor's Motion for Suspension of this Case

The Debtor opposes dismissal and conversion and asks the Court to suspend all proceedings in the case pending the outcome of the State Court appeal.

Section 305(a) of the Bankruptcy Code provides that "the court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if … the interests of creditors and the debtor would be better served by such dismissal or suspension. . . ."[2]

The Debtor, as the moving party, bears the burden of showing that his interests and his creditors' interests would benefit from dismissal or suspension of proceedings under § 305(a)(1).  *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462-63 (Bankr. S.D.N.Y. 2008).

Courts consider whether to suspend proceedings under § 305(a) on a case-by-case basis and some courts apply the following factors:

    (1) the economy and efficiency of administration;

---

[2] Congress originally intended this section to be used to prevent a few recalcitrant creditors from derailing an otherwise popular out-of-court workout with an involuntary bankruptcy filing. *In re Xinyuan Real Est. Co. Ltd.*, 678 B.R. 1, 12 (Bankr. S.D.N.Y. 2026).

(2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;

(3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets;

(5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7) the purpose for which bankruptcy jurisdiction has been sought.

*Id.* at 464-65.

Factors four and seven apply here and weigh against granting the Debtor's motion. Conversion to Chapter 7, as discussed above, is an alternate means of achieving an equitable distribution of assets. The Debtor benefits from conversion because he retains the protection of the automatic stay and the creditors benefit from conversion because they can have confidence that Debtor's assets (including, in particular, the indemnification claim) will be protected, pursued, and liquidated in an orderly manner. Suspension would not further the creditors' interests and would, in fact, be unfairly prejudicial as it would require them to await the appeal without the protection of a bond.

17

As previously discussed, this case was filed by Debtor to circumvent the payment of a supersedeas bond in the underlying state court appellate process. Permitting the Debtor to file a bankruptcy case and then suspend all proceedings would enable an impermissible end run around the state court process to the unfair prejudice of the St. Clare's Pensioners.

### Conclusion

For the foregoing reasons, the United States Trustee's Motion to Dismiss or Convert this case (Docket No. 70) is GRANTED and this case is converted to a case under Chapter 7 for cause pursuant to 11 U.S.C. § 1112(b); the St. Clare's Pensioners' motion (Docket No. 66) is DENIED as moot; and the Debtor's Motion for Suspension of this Case (Docket No. 76) is DENIED.

*###*